UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

August 22, 2013

LETTER TO COUNSEL:

    RE:    *Stephen Martin v. Commissioner, Social Security Administration*;
            Civil No. SAG-12-1130

Dear Counsel:

      On April 13, 2012, the Plaintiff, Stephen Martin, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income ("SSI"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment, and Mr. Martin's reply. [ECF Nos. 16, 19, 20]. I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

      Mr. Martin filed his claim for benefits on September 28, 2009, alleging disability beginning on September 14, 2009. (Tr. 120-25). His claim was denied initially on April 15, 2010, and on reconsideration on September 2, 2010. (Tr. 79-82, 86-87). A hearing was held before an Administrative Law Judge ("ALJ") on August 4, 2011. (Tr. 28-74). After the hearing, on August 9, 2011, the ALJ determined that Mr. Martin was not disabled during the relevant time frame. (Tr. 9-25). The Appeals Council denied Mr. Martin's request for review (Tr.1-6), making the ALJ's decision the final, reviewable decision of the agency.

      The ALJ found that Mr. Martin suffered from the severe impairments of substance dependence, bipolar disorder, anxiety disorder, chronic obstructive pulmonary disorder (COPD), attention deficit hyperactivity disorder (ADHD), depressive disorder, hepatitis C, history of abscess to the left poplietal fossa, status post incision and drainage. (Tr. 14). Despite these impairments, the ALJ determined that Mr. Martin retained the RFC to:

> [P]erform light work as defined in 20 CFR 416.967(b) except the claimant has the following additional limitations: (1) he can frequently operate food [sic] controls with the left lower extremity; (2) he can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; (3) he can never climb ladders, ropes or scaffolds; (4) he must avoid concentrated exposure to[] extreme cold and extreme heat; humidity; excessive vibrations; pulmonary irritants, such as fumes, odors, dust, and gases; poorly ventilated areas; hazardous moving machinery; and

>  unprotected heights; (5) he is limited to simple, routine, repetitive tasks in a low stress work environment (defined as no strict production quotas); and (6) he can only occasionally and superficially interact with the public, [coworkers], and supervisors.

(Tr. 16). After considering the testimony of a vocational examiner ("VE"), the ALJ determined that Mr. Martin could perform work existing in significant numbers in the national economy, and that he was therefore not disabled during the relevant time frame. (Tr. 19-20).

Mr. Martin presents two arguments on appeal, that the ALJ: (1) erroneously considered Listing 12.05 (mental retardation); and (2) improperly applied the special technique used in evaluating mental impairments. Each argument lacks merit.

First, Mr. Martin contends that the ALJ lacked sufficient information about his IQ to assess whether he met Listing 12.05. That Listing requires a "valid verbal, performance, or full scale IQ of 60 to 70." Mr. Martin's testing, performed by Dr. Robert Kraft, showed a full scale IQ of 73, a "verbal comprehension index score" of 76, and a "perceptional reasoning index score" of 92. (Tr. 376-77). Because the various tests have been modified since the Listings were created, the "verbal comprehension index score" is the equivalent of "verbal IQ", and the "perceptional reasoning index score" is the equivalent of "performance IQ." *Green ex rel. K.C.G. v. Astrue,* No. 09-1028, 2011 WL 1440363, at *4 (M.D. La. Feb. 15, 2011), *report & recommendation adopted,* 2011 WL 1456218 (M.D. La. Apr. 14, 2011) (quoting David Weschler, *WISC-IV Administration & Scoring Manual* 4 (2003)) ("The terms Verbal IQ (VIQ) and Performance IQ (PIQ) have been replaced with the terms Verbal Comprehension Index (VCI) and Perceptual Reasoning Index (PRI) respectively."); *see also Pierson v. Colvin,* No. 1:12-cv-20 RP-TJS, 2013 WL 1785494, at *3 n. 5 (S.D. Iowa April 26, 2013) (same); *Isaac ex rel. JDM v. Astrue,* No. CA 1:12-00097C, 2012 WL 5373435, at * 3-4 (S.D. Ala. Oct. 30, 2012) (rejecting argument that a "working memory" score below 70 suffices to meet the listing criteria). Each of Mr. Martin's relevant scores, then, is above the cutoff of 70 required to meet the listing.

In support of his argument that the ALJ should have sought further information regarding the Listing, Mr. Martin cites the notation in Dr. Kraft's report suggesting that his full scale IQ score of 73 "was not a valid summary of his overall general intelligence." (Tr. 376-77). It is clear, however, that Dr. Kraft believed to suggest that the discrepancies in scores in various areas, which he believed resulted from a learning disability as opposed to low intelligence, results in an average full scale IQ that is too low, rather than too high. (Tr. 377) (Dr. Kraft report stating that the weak performance in verbal reasoning "is likely suggestive of a premorbid language-based learning disability rather than a decline in functioning."); (Tr. 378) ("His cognitive profile is suggestive of a language-based learning disability and possibly attention deficits due to his weak auditory encoding skills and weak processing speed."). No further information from Dr. Kraft was required to clarify his detailed report.

Mr. Martin further contends, in his reply, that his impairment "equals" the criteria of Listing 12.05. Pl. Reply 2-3. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley,* 493 U. S. 521, 531 (1990) (emphasis in original); *see also* 20 C.F.R. § 404.1526. Medical equivalency can be established in three ways. If the claimant has an impairment that is described in the Listing, but (1) does not meet each criteria specified in the listing, or (2) exhibits all of the required findings, but lacks the required severity level for each finding, the claimant can show equivalency by proving other findings related to the impairment that are at least of equal medical significance to the listed criteria. *Id.* § 404.1526(b)(1). Next, if the claimant suffers from an impairment that is not described in a Listing, the claimant can prove equivalency by showing that the claimant's impairment is at least of equal medical significance to the criteria of a closely analogous listing. *Id.* § 404.1526(b)(2). Third, if the claimant has a combination of impairments which do not individually meet any listing, the claimant can establish equivalency by establishing findings of at least equal medical significance to the criteria contained in the most analogous listing. *Id.* § 404.1526(b)(3). Importantly, "[a] claimant cannot qualify for benefits under the 'equivalency' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531. Equivalent evidence for each of the criteria must be established.

In this case, Mr. Martin makes no specific argument about how he can establish evidence equivalent in severity to the required IQ below 70, and cites no facts in support of that argument.[1] Instead, he merely makes a procedural argument suggesting that the ALJ did not engage in the required analysis. I disagree. The ALJ specifically made the finding that, "[T]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.05, 12.06, and 12.09." (Tr. 15). Next, the ALJ undertook the "special technique" for mental impairments as discussed below. *Id.* The burden to establish a disabling impairment at Step Three, by demonstrating that a Listing has been met or equaled, rests with the claimant. *Bowen v. Yuckert,* 482 U.S. 137, 146 (1987). Because Mr. Martin has not met that burden, the ALJ's opinion must be affirmed.

Mr. Martin's second argument is similarly deficient. The ALJ applied the required "special technique" used to evaluate the severity of mental impairments and to determine whether an impairment meets or medically equals a listing. That technique is set forth in 20 C.F.R. § 404.1520a; *Rabbers v. Comm'r of the Soc. Sec. Admin.*, 582 F.3d 647, 652-54 (6th Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (*citing Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007)). The ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). The ALJ must "then rate the degree of

---

[1] The only factual argument that could be construed to suggest equivalency would be the working memory index score of 63. Pl. Reply 2. However, as addressed above, Dr. Kraft believed the low score to be related to a learning disability and attention deficits rather than general intelligence considerations. (Tr. 378).

Civil No. SAG-12-1130
August 22, 2013
Page 4

functional limitation resulting from the impairment(s)" in four broad functional areas. *Id*. § 404.1520a(b)(2), 404.1520a(c). The ALJ must document the application of the technique in the hearing decision, incorporating pertinent findings and conclusions, and documenting the significant history and functional limitations that were considered. *Id.* § 404.1520(e)(4).

Although the ALJ did not follow the best practice of summarizing the evidence in each of the four functional areas immediately following the degree of functional limitation, the ALJ's opinion contains sufficient analysis to allow me to review the basis for his findings. With respect to each functional area, the ALJ provided a concise description of the basis for his determination, without citing to specific medical exhibits. (Tr. 15). However, elsewhere in the opinion, the ALJ addressed Mr. Martin's activities of daily living, (Tr. 17), his social interaction and functioning, (Tr. 17-19)*,* and his concentration, persistence, and pace. *Id.* Specifically, the ALJ addressed the treatment notes from various examinations and office visits (Tr. 17-18) and the opinions of consultative examiners and treating physicians. (Tr. 18-19). Although the ALJ cites to the GAF scores assigned by the various medical sources, he did not always agree with the import of those scores and did not rely exclusively on the GAF scores to assess the validity of any source's opinion. *See, e.g.* (Tr. 18) ("Dr. Kraft's opinion, including assessing the claimant a GAF score of 60, which indicates mild to moderate symptoms, is consistent with the overall record as a whole."); *Id.* ("A score of 65 indicates mild symptoms. Both the record, as well as Ms. Chase's examination that day, indicate that the claimant's symptoms are moderate in nature."). Because the ALJ cited to substantial evidence to support his decision, remand is unwarranted.

For the reasons set forth herein, Plaintiff's motion for summary judgment [ECF No. 16] will be DENIED and the Commissioner's motion for summary judgment [ECF No. 19] will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                  Sincerely yours,

                                  /s/

                                  Stephanie A. Gallagher
                                  United States Magistrate Judge